UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BRIAN TRIFILETTI, | CASE NO. 1:18CV679 |
| Plaintiff, | |
| v. | UNITED STATES MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Brian Trifiletti ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Supplemental Security Income ("DIB"). ECF Dkt. #1. In his brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ"): (1) failed to properly evaluate the opinion of his treating psychiatrist Dr. Seng; and (2) erred in evaluating the opinion of state agency sources where he rejected the most limiting aspects of the opinions and failed to consider whether those limitations were consistent with the treating psychiatrist opinion or the record as a whole. ECF Dkt. #14. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on April 2, 2015 alleging disability beginning January 1, 2013 due to anxiety, agoraphobia, panic attacks, and paruresis. ECF Dkt. #11 ("Tr.") at 128-133, 150.[2] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. *Id.* at 62-72. Plaintiff requested a hearing before an ALJ, and

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

the ALJ held a hearing on December 19, 2016, where Plaintiff was represented by counsel and testified. *Id*. at 33, 123-126.. A vocational expert ("VE") also testified. *Id.* at 33.

On April 28, 2017, the ALJ issued a decision denying Plaintiff's application for SSI. Tr. at 19-29. Plaintiff requested that the Appeals Council review the ALJ's decision and the Appeals Council denied his request for review on September 24, 2018. *Id*. at 1-5.

On March 26, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. He filed a merits brief on July 9, 2018 and Defendant filed a merits brief on September 27, 2018. ECF Dkt. #s 14, 17. Plaintiff filed a reply brief on October 11, 2018. ECF Dkt. #18.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

Notes in the record beginning January 4, 2006 from Plaintiff's treating physician indicate that Plaintiff had a phobia of voiding in public, as well as possible agoraphobia,, which was greatly improved with Lexapro, and anxiety/stress, which was also greatly improved with Lexapro. Tr. at 226. Plaintiff presented to his primary care doctor on that date and indicated that he was doing well and his symptoms were under good control, but he was not yet "totally back to normal life style." *Id*. The doctor further noted that Plaintiff "straight casts[sic] himself on a prn basis when he is problems voiding in public" and Plaintiff was treating with a counselor for his phobias. *Id.* Notes from the same physician dated April 6, 2006, May 6, 2006, June 13, 2006, June 20, 2006, September 29, 2006, December 12, 2006, January 2, 2007, April 4, 2007, May 7, 2007, and May 24, 2007 indicated that Plaintiff reported feeling well and his phobia for using public restrooms was "greatly improved." *Id.* at 208, 210, 212, 216, 218, 220, 221, 223, 224. Primary care doctor notes also indicated that on May 6, 2006, June 13, 2006, January 2, 2007, April 4, 2007, May 7, 2007, May 24, 2007, and that Plaintiff's possible agoraphobia and anxiety/stress were "greatly improved with Cymbalta." *Id*. at 210, 212, 214, 221, 223.

On June 27, 2013, Plaintiff presented to Dr. Seng, a psychiatrist, for his complaints of anxiety, depression and urinary problems. Tr. at 236. Dr. Seng conducted an evaluation, indicating that Plaintiff first noticed having a shy bladder at the age of six at a baseball game and he began feeling nervous in junior high school. *Id*. Plaintiff reported that after graduating from high school, he struggled with having a shy bladder and would have to go to the bathroom only at home. *Id.* He

-2-

attended a computer school and did really well and really liked it, but he began suffering from panic attacks. *Id.* at 237. He indicated that he took Lexapro in the past and it did not help. *Id*. He also indicated that he took Xanax, which helped with his panic attacks, and he took Cymbalta, which helped for anxiety and depression, but he only took it for a year or two as it caused constipation and maybe sexual problems. *Id.* Plaintiff also reported that he had a girlfriend for the past seven years, he still lived at home, and he could only work part-time because of his urinary issues. Tr. at 238.

Dr. Seng's mental status examination indicated that Plaintiff was friendly, attentive, communicative and relaxed. Tr. at 239. Plaintiff's mood presented as normal, with no signs of depression or mood elevation, and an appropriate affect, no hallucinations, delusions, bizarre behaviors, or suicidal ideations. *Id.* Dr. Seng found that Plaintiff had intact associations, logical thinking, and logical thought content, with normal range cognitive functioning and normal insight and social judgment. *Id*. He diagnosed Plaintiff with panic disorder, major depressive disorder, recurrent and unspecified, and attention deficit hyperactivity disorder ("ADHD"), combined presentation. *Id.* He acknowledged Plaintiff's medical diagnoses of paruresis and spondylolythesis and his prescribed medication of Xanax. *Id*. at 239-240. Dr. Seng rated Plaintiff's global assessment of functioning ("GAF") at 60, indicative of moderate symptoms. *Id*. at 240. He increased Plaintiff's Xanax dosage, and he prescribed Zyprexa. *Id*.

Dr. Seng's July 16, 2013 treatment notes indicate that Plaintiff presented to him and reported that he was feeling better. Tr. at 242. Plaintiff reported that his anxiety symptoms were less frequent, less intense, and were improved. *Id.* Mental status examination indicated that Plaintiff was wary, attentive, fully communicative, and he appeared anxious. *Id.* He had normal speech, a normal mood with no signs of depression or mood elevation, an appropriate affect, and no hallucinations, delusions, bizarre behaviors, or suicidal ideations. *Id.* Dr. Seng found that Plaintiff had intact associations, logical thinking, and logical thought content, with normal range cognitive functioning and normal insight and fair social judgment. *Id*. He diagnosed Plaintiff with panic disorder, major depressive disorder, recurrent and unspecified, and ADHD, combined presentation. *Id.* at 243. He acknowledged Plaintiff's medical diagnoses of paruresis and spondylolythesis and

his prescribed medication of Xanax. *Id*. Dr. Seng rated Plaintiff's GAF at 60, indicative of moderate symptoms. *Id*. at 240. He counseled Plaintiff and continued his medications. *Id*.

On August 17, 2013, Dr. Seng indicated that improvement was occurring and Plaintiff indicated that he was slowly getting better, although his anxiety and agoraphobia continued, but were improving. Tr. at 245. Plaintiff reported being able to go to his girlfriend's house, but his relationships with his family and friends were noted as decreased. *Id*. Dr. Seng's mental status examination indicated that no abnormalities were found and there was intact recent and remote memory, normal attention span, no signs of hyperactivity, no signs of anxiety, and intact judgment and insight. *Id*. The same previous diagnoses and GAF were made, and Plaintiff received counseling. *Id*. at 246.

Plaintiff continued to treat with Dr. Seng in September, October, November and December of 2013. Dr. Seng's mental status examinations during this time found that Plaintiff presented with no serious mental status abnormalities, an intact memory, and a normal attention span, he appeared wary, attentive, and anxious, and he had normal speech, appropriate affect, no hallucinations, delusions, or suicidal ideations, logical thinking and content, normal cognitive functioning, and fair insight and judgment. Tr. at 248, 251, 254, 257. Dr. Seng's diagnoses remained the same and his GAF scores were rated at 60 each time. *Id*. at 249, 252, 255, 257.

Dr. Seng continued to treat Plaintiff in 2014, noting improvement, with some continuing panic attacks, but no mental status examination abnormalities. Tr. at 260, 263. Due to the continuing panic attacks, anxiety, and agoraphobia, Dr. Seng tried additional medications, including Zoloft, Brintellix, Wellbutrin, Latuda, Zyprexa and Klonopin during the year. *Id.* at 264, 267, 273, 280, 287, 292. His mental status examination findings remained the same as those reported prior. *Id*. at 264, 268, 270. In July of 2014, Dr. Seng noted that Plaintiff showed an inadequate treatment response as his anxiety symptoms continued unchanged. *Id*. at 273. The mental status examination findings remained relatively the same at this session, and Wellbutrin was prescribed. *Id.* at 274-275. In August of 2014, Plaintiff's symptoms were partially improved as the panic attacks were less frequent and intense. *Id*. at 277.

September 2014 treatment notes from Dr. Seng indicated that Plaintiff showed inadequate treatment response as his anxiety symptoms continued and had increased. Tr. at 280. Dr. Seng noted that Plaintiff had reported that he had gotten out more than any time in the past, as he had gone to Cedar Point, Put-in-Bay, Riverfest, and bars. *Id*. Plaintiff reported that he could not go to a store or gas station as he would get short of breath, had poor focus, and was impatient. *Id*. Mental status examination findings remained essentially the same. *Id*. Dr. Seng added Latuda. *Id.* Plaintiff reported feeling better in early October of 2014 with the Latuda. *Id*. at 284. In late October of 2014, however, Plaintiff reported a setback and was feeling worse. *Id*. at 287. The mental status examination findings remained the same, however, as well as Plaintiff's diagnoses and GAF of 60. *Id*. at 288. Plaintiff's dosage of Zyprexa was changed. *Id*. at 289. Improvement was noted in November of 2014, although Plaintiff reported continuing social anxiety. *Id*. at 291. Klonopin was added to his medications. *Id*. at 292.

In 2015, Plaintiff continued to treat with Dr. Seng, and he reported in January of 2015 that he was unable to take Klonopin and his agoraphobia symptoms continued, as well as panic attacks, although the frequency and intensity of the panic attacks had decreased. Tr. at 294. Dr. Seng's mental status examination findings for Plaintiff remained essentially unchanged and his GAF remained at 60. *Id*. at 294-295. April 9, 2015 treatment notes indicate that Plaintiff was able to go to Cleveland and felt panicky, and the next day he had a panic attack in a gas station. *Id.* at 297. Mental status examination findings indicated that Plaintiff was wary, inattentive, communicative and anxious, with normal speech and cognitive functioning, fair insight and judgment, but he was mildly depressed, appeared downcast, and his affect was blunted. *Id*. Dr. Seng added the diagnosis of agoraphobia and removed the ADHD diagnoses. *Id*. at 298. He assigned Plaintiff a GAF of 55, still indicative of moderate symptoms. *Id.* Plaintiff reported continuing panic attacks in August of 2015 and Lithium was added to his medications. *Id*. at 318. In December of 2015, Dr. Seng changed Plaintiff's diagnoses to agoraphobia with panic disorder and major depressive disorder, mild and recurrent. *Id*. at 325. He assigned Plaintiff a GAF of 50, indicative of serious symptoms, and he added Lamictal to Plaintiff's medication regimen. *Id*.

On June 13, 2015, Dr. Seleshi, M.D., an agency reviewing doctor, considered the evidence of record and specifically considered Listings 12.04 for affective disorder, 12.06 for anxiety-related disorders, and 12.07 for somatoform disorders. Tr. at 56. Dr. Seleshi opined that Plaintiff was mildly restricted in his daily living activities and in maintaining concentration, persistence or pace, and he was moderately restricted in maintaining social functioning. *Id*. He concluded that Plaintiff's anxiety may reduce his work-related efficiency and he could perform a variety of tasks that could be carried out independent of others without expectations to adhere to strict productivity standards or time constraints. *Id*. at 58. He found that Plaintiff was markedly limited in interacting with the general public and moderately limited in interacting with others, so he should avoid work involving more than an occasional direct contact with the general public or collaborative tasks entailing sustained engagement with others. *Id*. at 58-59. He further opined that Plaintiff could relate to co-workers and supervisors on a brief, intermittent and superficial basis only. *Id*. at 59. He also opined that Plaintiff could work in a stable, low-stress environment where he could perform solitary assignments at a relaxed pace. *Id*. Dr. Waggoner, Psy.D., reviewed the record and affirmed Dr. Seleshi's findings and opinion. *Id*. at 63-71.

Dr. Seng continued to treat Plaintiff in 2016 and his anxiety symptoms continued. Tr. at 327. He reported that it was a struggle to go out and mental status examination findings showed that Plaintiff appeared way, inattentive, communicative, anxious, with mild depression symptoms, appropriate affect, no hallucinations, delusions, or bizarre behaviors, logical thinking, and fair insight and judgment. *Id.* Lamictal added to his medication regimen in January appeared to be helping in April of 2016, with Plaintiff reporting that he was feeling much better. *I*d. at 330. He indicated that he could occasionally go to a store or other building with his girlfriend and he was participating in adult education. *Id.* Dr. Seng told him to try to get out daily to see how far he could go. *Id*. at 331.

Dr. Seng's June 2016 treatment notes show that Plaintiff reported that he was able to go to Columbus to watch a graduation ceremony, but his agoraphobia symptoms continued, although they had improved. Tr. at 333. July 2016 treatment notes indicate that Plaintiff's condition was stable and he had no psychiatric complaints. *Id*. at 336. Plaintiff reported that he was going to live with

his girlfriend and his behavior was stable and uneventful. *Id*. September 2016 treatment notes show that Plaintiff appeared to be improving, he moved in with his girlfriend, and he was getting out more. *Id.* at 339. He was going to a store 1-2 times per week and he was able to use the bathroom when he was out and able to go to a restaurant. *Id.* He indicated that he enjoyed a past teaching position and he continued to look for anything that would allow him flexibility and the ability to work only part-time as he continued to struggling with "'having to be'" anywhere. *Id*.

On November 29, 2016, Dr. Seng completed a medical assessment of Plaintiff's ability to perform work-related activities with his mental impairments. Tr. at 343. Dr. Seng checked the "Extreme" boxes as to Plaintiff's abilities to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration. *Id*. "Extreme" was defined as "[t]he individual has major limitations in this area with no useful ability to function." *Id.* In describing the findings that supported his assessment, Dr. Seng wrote that "[h]is [Plaintiff's] agoraphobia has not allowed him to consistently go anywhere particularly if there is some requirement that he remain at the location. His anxiety becomes debilitating." *Id*. Dr. Seng also checked "Extreme" for Plaintiff's abilities to understand and carry out any kind of job instructions, including simple instructions. *Id.* at 344. In support, he wrote "[a]gain, his agoraphobia would prevent attendance & would cause debilitating anxiety if he tried." *Id*. In assessing Plaintiff's abilities to make personal and social adjustments, Dr. Seng checked the "Extreme" boxes for Plaintiff's abilities to maintain his personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. *Id*. He relied on his prior statements for support. *Id*. When asked about other work-related activities, Dr. Seng wrote that "[h]is agoraphobia includes the inability to use public restrooms. He often has to self catheterize to urinate in a public bathroom." *Id*. Dr. Seng further opined that Plaintiff could work "0" hours regularly in a workday, and he would be absent 5 days per month from work due to his impairments and/or treatment. *Id*. at 343. He also indicated that Plaintiff could manage benefits in his own best interest. *Id*. at 345.

### B. TESTIMONIAL EVIDENCE

At the ALJ hearing held on December 19, 2016, Plaintiff testified that he was 36 years old

and lived with his mother. Tr. at 36. He is a high school graduate and went to a vocational school where he learned computer skills. *Id.* at 37. He was not working and had last worked teaching adult education on computers at the vocational school three years ago on a part-time basis. *Id.* He reported that he stopped teaching because he had a huge panic attack that debilitated him. *Id.* He then stated that he had a graduation ceremony where he had to go on stage and speak in front of about 300 people when he had a "very big panic attack." *Id.* at 38. He testified that he recovered from that, but then he had another panic attack the next day while at Walmart and he has not been able to recover since. *Id.*

Plaintiff explained that he earned no income prior to 2011 because of his paruresis, a urinary problem where he cannot use a restroom outside of his house. Tr. at 39. He explained that he could teach at the vocational school because it was five minutes away from his house and so he could take his breaks and go home to use the restroom. *Id.* He indicated that his mom then had to move, and they ended up moving 40 minutes away, which is when his stress, anxiety, and agoraphobia surfaced. *Id.* Plaintiff and the ALJ then discussed Plaintiff's treatment with Dr. Seng, which included medication and therapy. *Id.*

Plaintiff testified that he had a girlfriend for the past 11 years and she lived in another city, but they see each other every weekend. Tr. at 41. He indicated that she had two children and he gets along well with them. *Id.*

Plaintiff's counsel then asked him questions, and Plaintiff testified that he had panic attacks once per day and they differed in severity and duration. Tr. at 43. He indicated that not being able to urinate and being in buildings causes anxiety attacks, as well as elevators, lights, and crowds of people in smaller spaces. *Id.* at 43-45. Plaintiff explained that breathing techniques, fleeing, or taking Xanax helps the panic attacks. *Id.* at 45. He stated that he could not go to the grocery store. *Id.* Plaintiff also testified that he has had the urination issue since elementary school and he was able to hold his bladder in school until he got home. *Id.* at 46-47.

Plaintiff also discussed his depression diagnosis, explaining that he was depressed because he felt like he was never going to get better. Tr. at 47. He reported that he has tried desensitization techniques and it worked with going into a Drug Mart, but he had to go in with his girlfriend or his

-8-

mother. *Id.* He indicated that he goes nowhere by himself, except to Dr. Seng's office, which was a small building where he felt safe. *Id.* at 48. He explained that he used to be unable to sit at a stoplight when driving his car, could not go through a drive-thru for food, and could not get onto the highway, although now he has gotten a little better with those things. *Id.* He believes that his condition has remained the same over the past few years or has improved on a minor basis. *Id.*

The VE then testified. Tr. at 49. The ALJ asked him to assume a hypothetical individual with Plaintiff's age, education and work experience, whose only limitations were to avoid work involving more than occasional direct contact with the general public or collaborative tasks involving sustaining engagement with others; interactions with co-workers and supervisors on a brief and intermittent, and superficial basis; few, if any, workplace changes; and no fast-paced production requirements. *Id.* When asked if this hypothetical individual could perform any jobs existing in the national economy, the VE responded that such a person could perform such jobs, including the jobs of inspector and hand packager. *Id.*

Plaintiff's attorney asked the VE what the maximum off-task limitation was that would be accepted by employers and the VE responded that less than 15% of the workday would not affect job retention. Tr. at 51.

### III. RELEVANT PORTIONS OF ALJ'S DECISION

On April 28, 2017, the ALJ issued a decision finding that Plaintiff had not engaged in substantial gainful activity since April 2, 2015, the application date, and he found that since that date, Plaintiff had the severe impairments of depressive disorder and anxiety disorder. Tr. at 21. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 22-23. After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: avoidance of work involving more than occasional direct contact with the general public or collaborative tasks entailing sustained engagement with others; he can relate with co-workers and supervisors on a brief, intermittent, and superficial basis; few, if any, workplace changes; and no fast-pace production requirements. *Id.* at 23.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff had no past relevant work, and he could perform jobs existing in significant numbers in the national economy, such as an inspector/hand packager, assembler of plastic hospital products, or assembler of electrical accessories. Tr. at 28-29. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to SSI since April 2, 2015, the date that the application was filed. *Id.* at 29.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

-10-

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## VI. LAW AND ANALYSIS

### A. TREATING PHYSICIAN OPINION

Plaintiff first asserts that the ALJ violated the treating physician rule and 20 C.F.R. § 416.1527 by failing to provide good reasons for not affording controlling weight to the opinion of Dr. Seng, his treating psychiatrist. ECF Dkt. #14 at 12-18. For the following reasons, the Court finds that the ALJ provided good reasons for affording less than controlling weight to Dr. Seng's opinion and substantial evidence supports that determination.

An ALJ must give controlling weight to the opinion of a treating source if he finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion,

-11-

he must provide "good reasons"[3] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). That Court has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence." Https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

The ALJ in the instant case addressed Dr. Seng's November 29, 2016 opinion in his decision and he attributed it only little weight, finding that the extreme limitations that Dr. Seng opined for Plaintiff were not consistent with his clinical findings on examination or with the course of treatment. Tr. at 27. The ALJ elaborated, explaining that Dr. Seng's treatment notes documented mental status examinations that were for the most part normal. *Id*. The ALJ explained that while the treatment records noted that Plaintiff sometimes appeared wary, anxious and/or depressed, most of the notes indicated that Plaintiff had a normal mood, he was attentive, he had normal speech and did not show or report signs of hallucinations, delusions, bizarre behavior or other psychotic symptoms, and he had intact associations, logical thinking, and appropriate thought content. *Id*. at 27, citing Tr. at 270, 277-278, 281, 284, 287-288, 294-295, 321, 327, 333, 336. The ALJ further noted that all but one of Dr. Seng's GAF scores for Plaintiff were indicative of only moderate symptoms. *Id.* at 27. The ALJ also explained that Plaintiff had no psychiatric hospitalizations, no emergency department visits for acute psychiatric symptoms, and he did not require or receive intensive outpatient mental health services. *Id*. The ALJ further noted that the fact that Dr. Seng opined that Plaintiff could manage benefits in his own best interest was inconsistent with the extreme limitations that he opined for Plaintiff. *Id*. at 28.

The Court finds that the ALJ's reasons for affording less than controlling weight and only little weight to Dr. Seng's opinion constitute good reasons under the treating physician rule. The ALJ clearly explained that Dr. Seng's mental status examination findings did not support his very severe limitations for Plaintiff. Tr. at 27. A treating source's medical opinion is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record" 20 C.F.R. § 404.1527(c)(2). The ALJ also found that Dr. Seng's extreme limitations were not consistent with the GAF scores that he frequently assigned to Plaintiff, which were indicative of moderate symptoms. Tr. at 27. The ALJ explained that for all but one treatment note, the GAF

-13-

scores reflected only moderate symptoms. In addition, the ALJ noted that Plaintiff had not been psychiatrically hospitalized, he had not been in the emergency room for acute psychiatric symptoms, and he did not require intensive outpatient mental health services. *Id.* Finally, the ALJ found that Dr. Seng's opinion that Plaintiff could manage benefits in his own best interest was inconsistent with his opinion that Plaintiff was extremely limited. *Id.*

The Court finds that these reasons constitute good reasons to provide a clear explanation to determine why the ALJ attributed less than controlling weight to the opinion of Dr. Seng. Plaintiff argues that the ALJ failed to consider the treatment relationship between him and Dr. Seng as required by 20 C.F.R. § 416.1527(c)(1). ECF Dkt. #14 at 18. However, the ALJ specifically stated that Plaintiff saw Dr. Seng on a regular basis and he stated that Plaintiff saw Dr. Seng 26 times from July 2013 through September of 2016. Tr. at 25, 26. Plaintiff further contends that the ALJ erred in relying on the GAF scores as they have limited value because they are a snapshot in time of a claimant's functioning. ECF Dkt. #14 at 14-15. Plaintiff is correct that GAF scores have such limited value. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 511 (6th Cir. 2006). However, the ALJ did not rely solely on this factor in analyzing Dr. Seng's opinion, but merely considered it in conjunction with other factors showing that Plaintiff did not have the extreme limitations that Dr. Seng opined. Plaintiff also submits that the ALJ erred in pointing out that he had no psychiatric hospitalizations or emergency room visits for his psychiatric symptoms because these are not required in order to be found disabled. ECF Dkt. #14 at 14. Again, Plaintiff is correct that hospitalizations and emergency room visits are not required in order to be found disabled. However, these facts can be considered by the ALJ in determining whether the medical evidence and clinical findings are consistent with the treating physician's opinion. *See Kepke v. Comm'r of Soc. Sec.*, 36 Fed.App'x 625, 63 (6th Cir. 2016), unpublished, citing and quoting *Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 542 (6th Cir.2014) (That the claimant "did not require frequent emergency room visits for asthma attacks or other acute respiratory problems" was not in alignment with the "clinical findings and medical evidence."). The ALJ in the instant case thus properly considered these facts in conjunction with one another and in conjunction with other factors, such as Dr. Seng's opinion, the agency reviewing medical source opinions, and Plaintiff's testimony and daily activities.

-14-

Plaintiff further asserts that the ALJ failed to find his agoraphobia to be a severe impairment at Step Two and thereafter failed to consider the nature and extent of his agoraphobia in determining Plaintiff's mental RFC. ECF Dkt. #14 at 15-18. The Court finds while the ALJ did not specifically mention agoraphobia at Step Two, it appears that he nevertheless considered it a severe impairment in the context of an anxiety disorder. Tr. at 21. The ALJ found that Plaintiff's depressive disorder and anxiety disorder were severe impairments at Step Two. *Id.* At Step Three, he then analyzed Plaintiff's mental impairments under Listing 12.04 for depressive disorder and Listing 12.06 for anxiety disorders. Tr. at 22-23. In discussing whether the "interaction with others" component of the "paragraph B" criteria was satisfied for Listings 12.04 and 12.06, the ALJ specifically referred to Plaintiff's testimony that crowds of people can trigger a panic attack, he was confined to his house, and he did not participate in social activities. *Id*. at 22. The ALJ also noted reports that Plaintiff's relationships with family and friends were normal at times and reduced at times. *Id*. The ALJ further indicated that the record showed that Plaintiff has been able to go to his girlfriend's house, he has maintained a 10-year relationship with his girlfriend, he reported that he has an "excellent" relationship with his girlfriend's 16 and 17 year-old children, he reported that he had never been fired or laid off from a job due to problems getting along with others, and he reported that he had no problems with authority figures. *Id.*

Further, in the RFC part of the ALJ's decision, he noted that Dr. Seng added a diagnosis of agoraphobia for Plaintiff on August 4, 2015. Tr. at 25. The ALJ also noted that Dr. Seng assigned Plaintiff a GAF on that date of 55, indicative of moderate symptoms, and examination notes of Plaintiff looking unhappy and appearing downcast. *Id.* He further noted that Dr. Seng added Lithium to Plaintiff's medications and in December 2015, he added Lamictal as well. *Id*. at 26. The ALJ indicated that by January 2016, Plaintiff reported to Dr. Seng that his anxiety symptoms were less frequent or intense and by September of 2016, Plaintiff reported that he had moved in with his girlfriend and he was getting out more. *Id*. Dr. Seng also noted that Plaintiff reported that he was going to the store one or two times per week and he had gone to a restaurant. *Id*. Plaintiff did indicate that he still struggled with "having to be" anywhere and with not being able to go to a

-15-

bathroom. *Id.* These references by the ALJ establishes that the ALJ did consider Plaintiff's agoraphobia throughout his decision.

For the reasons state above, the Court finds no merit to Plaintiff's assertions and finds that the ALJ provided good reasons for affording less than controlling weight and only little weight to Dr. Seng's opinion and substantial evidence supports that determination.

### B.     STATE AGENCY OPINIONS

Plaintiff also asserts that the ALJ erred in his mental RFC for Plaintiff because the ALJ's mental RFC was not as restricted as the mental RFCs opined by Dr. Seng or by the state agency reviewing doctors. ECF Dkt. #14 at 19. Plaintiff contends that the ALJ had to explain why his mental RFC for Plaintiff was different than those of the agency reviewing doctors. *Id.* He contrasts the ALJ's mental RFC for Plaintiff with the findings of the agency reviewing doctors. *Id.*

The Court has already found that the ALJ provided good reasons for attributing less than controlling weight and only little weight to Dr. Seng's opinion. Accordingly, the ALJ was not required to adopt Dr. Seng's extreme limitations. As to the opinions of the agency reviewing medical sources, the ALJ addressed these opinions as well. Tr. at 27. The agency sources opined that Plaintiff: could perform a variety of tasks that can be carried out independent of others without expectations to adhere to strict productivity standard or time restraints; should avoid work involving more than occasional direct contact with the general public or collaborative tasks entailing sustained engagement with others; can relate to co-workers and supervisors on a brief intermittent and superficial basis; and work in a stable low stress environment where he can perform solitary assignments at a relaxed pace. *Id.* at 58-59, 68-69.

The ALJ's mental RFC for Plaintiff found that Plaintiff should avoid work involving more than occasional direct contact with the general public or collaborative tasks entailing sustained engagement with others. Tr. at 23. This is identical to the opinions of the state agency sources. *Id.* at 58, 68. The ALJ also provided in his mental RFC for Plaintiff that Plaintiff could relate with co-workers and supervisors on a brief, intermittent, and superficial basis, with few, if any, workplace changes. *Id.* This mirrors the opinions of the state agency sources. *Id.* at 59, 69. The ALJ further

provided in his mental RFC for Plaintiff that Plaintiff could not perform work with fast-pace production requirements, as also opined by the state agency medical sources. *Id.* at 23, 59, 69.

The only differences between the mental RFC determined by the ALJ and that of the agency reviewing medical sources is that the agency reviewing sources opined that Plaintiff should be limited to a stable, low stress environment where he can perform solitary assignments at a relaxed pace. Tr. at 23, 59, 69. The ALJ did not adopt this part of the agency reviewing medical sources' opinions, explaining in his decision that he gave no weight to the solitary assignment restriction because Plaintiff lived with his mother and socialized with his girlfriend and her two teenage children on a regular basis. *Id*. at 27. He also explained that he gave no weight to the "relaxed pace" limitation because it was an imprecise term. *Id.*

It is true that state agency consultants are highly qualified specialists and experts in Social Security disability evaluation. Social Security Ruling ("SSR") 96–6P, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 404.1527. The ALJ must consider factors such as the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors in evaluating every medical opinion, unless a treating source's opinion is given controlling weight. 20 C.F.R. § 404.1527(c).

However, ALJs are not bound by the findings of a state agency psychologist. SSR 96-6p. Moreover, "[a]lthough physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec*., 359 Fed. App'x 574, 578 (6th Cir.2009) (citing 20 C.F.R. § 404.1527(e)(1)). Accordingly, while opinions from medical sources are considered by the ALJ on issues such as a RFC, it is the ALJ who has the final responsibility for deciding this issue and an ALJ is not required to adopt every limitation opined by a medical source. 20 C.F.R. § 416.1527(e)(1). While evidence

may support a more restrictive RFC assessment, the Court must affirm the ALJ's determination where substantial evidence supports it. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986).

Here, the ALJ restricted Plaintiff to work involving no more than occasional direct contact with the general public or collaborative tasks requiring sustained engagement with others, no more than brief, intermittent, superficial contact with co-workers and supervisors, few, if any workplace changes, and no fast-pace production requirements. Tr. at 23. To the extent that this mental RFC is not identical to that of the agency reviewing sources, the ALJ was not required to adopt their opinions exactly or in full. The ALJ considered their opinions and sufficiently explained why he did not attribute weight to the solitary assignment and "relaxed pace" restrictions. Moreover, the ALJ had the final responsibility for determining Plaintiff's mental RFC and he determined that mental RFC after considering the opinions of record and providing sufficient and supported reasons for not including the solitary assignment and exact "relaxed pace" restrictions in his decision. Accordingly, the Court finds no merit to Plaintiff's assertion of error.

## **VII. CONCLUSION**

For the above reasons, the Court orders that the decision of the ALJ is hereby AFFIRMED and Plaintiff's complaint is hereby dismissed in its entirety WITH PREJUDICE.

Date: July 31, 2019            */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE